The opinion of the Court was delivered by
Todd, J.
This case presents a contest between a privilege creditor, claiming the builder’s privilege, and a creditor by special mortgage of an insolvent succession, over the proceeds of the sale of certain immov-. able property sold at probate sale.
The contract, under which the privilege is claimed, was for the building of the “Long- Branch Hotel,” near the Abita Springs, in the Parish of St. Tammany.
This contract was recorded 011 the 13th of April, 1880.
The mortgage referred to was recorded on the 26fch of May, 1880.
The property was sold on the 20th of November thereafter, and bought in by the morigage creditor. After the sale,-the administrator filed an account and-tableau, in -which the builder’s claim and privilege were not recognized, and the, proceeds of the sale of the hotel building and the tract of land in which it was situated, were applied, after payiug some general privileges, to the payment of the special mortgage referred to.
The account was opposed by Gazin, the contractor for the building of the hotel, who claimed -to be paid in preference to Miehaelis, the mortgage creditor, and who appeals from the judgment rejecting his privilege, and placing him on the tableau as an ordinary creditor.
The privilege claimed is resisted mainly on the ground, that the property, land and building was sold in block, and without any-separate appraisement having been applied for or made before the sale; the *870 only other ground, of opposition being that some of the items of the debt did not come within the terms and stipulations of the recorded contract, and hence never imported a privilege protected by the registry of that contract..
There is no doubt that there is a seeming conflict in the decisions of this Court upon this question, that is, as to the necessity of a separate appraisement of the land and buildings before the sale is made, to entitle the claimant of a builder’s privilege to its recognition and enforcement against the proceeds of the sale.
The Articles of the Code upon this subject, and bearing on the point in controversy, are the following:
Article 3249 declares the privileges upon immovables to be:
1. In favor of the vendor of the same.
2. In favor of “ architects, undertakers, bricklayers, painters, master builders, contractors, sub-contractors, journeymen, laborers, cartmen, and other workmen ” employed to construct or rebuild houses, etc.
3. In favor of the furnishers of materials for the construction and repair of buildings, etc.
This Article further provides, that the privilege granted the parties named in the two last paragraphs, shall take effect on the building or other work, and upon the lot, not to exceed one acre, on which such building or other work is erected.
Art. 3267 provides : That the privilege in favor of the builder or the furnishers of materials and workmen, shall be paid from the price of the building, or other work, in preference to all other privileges, except for affixing seals, making inventories, and the necessary expenses of procuring the sale of the property.
A privilege, the Code defines to be, “ a right which the nature of the debt gives to the creditor, and which entitles him to be preferred before other creditors, even those who have mortgages.” C. C. 3186.
“A privilege precedes all mortgages.” 31 An. 318; 32 An. 580.
The only Article of the Code which refers to a separate appraisement of immovable property subject to different or conflicting privileges, is 3268, which is in these words:
“ When the vendor of lands finds himself opposed by workmen seeking payment for a house or other work erected on the land, a separate appraisement is made of the ground and the house, the vendor is paid to the amount of the appraisement on the land, and the other to the amount of the appraisement of the building.”
It is to be noted that this Article provides for a case of conflicting privileges between the vendor of an immovable, and the'workman or builder who constructs a house or other improvement thereon, and does not express when the separate appraisement mentioned is to be *871 raade, whether before or after the sale of the immovable, audit is to be noted, also, that in the case before us, the- contest is not between creditors holding different privileges, but between a creditor with a' recorded privilege and a creditor holding a special mortgage recorded several weeks afterwards.
The provision contained in this last Article is not a modern provision, originating only with reference to the system of privileges established by the Code, but is merely declaratory of an ancient principle or rule which we find treated of in Domat, (from whom we quote) thus:
“It often happens that many things having been sold by the lump, together, for one sum, without distinguishing the price of each, it becomes necessary afterwards, to know the price of each particular; and to regulate how much every one of the things may be worth upon the foot of the price that was given for the whole. And this way of making an estimate is what is called ventilation. Thus, for example, if one of several lands that were sold for one price (un seul prix) happens to be subject to a fine of alienation, it is by ventilation that this fine is regulated. And it would be the same thing if it were necessary to make a particular estimate of a portion of a house or other estate.” Domat, Cushing Ed., Vol. 1, 252.
This language, so far from supporting the proposition that a sale of property encumbered with a privilege and mortgage, in the absence of a separate appraisement before the. sale, destroys the right of the privilege creditor to any claim on the proceeds of the sale, conveys by strong implication, if not expressly, that no action is required to be taken by such creditor, in asserting his privilege, till after the sale is made.
From a close examination of all the Articles of the Code bearing on this subject, we are satisfied that there is no legal requirement compelling a privilege creditor to procure a separate appraisement before the sale of the particular immovable subject to his privilege to protect his right to the same, as against a creditor holding a mortgage on the property. This idea, we apprehend, has resulted from applying Art. 3328 of the, Code to immovables, when, in fact, it applies exclusively to movables, as will be seen from its language, which is as follows:
“ But if lie (the vendor) allows the things to be sold confusedly with a mass of other things belonging to the purchaser, without making his claim known, he shall lose the privilege, because it will not be possible, in such a case, to ascertain what price they brought.”
This Article is found under the title “ Of the Privilege of the Vendor of Movable Effects,” and evidently was intended to apply to a case where it was impossible to distinguish the proportion of the price, attributable to things subject to the vendor’s privilege, when they had *872 become- mixed with other personal effects of the purchaser and sold confusedly with them. Thus, it will he seen the Article does not retinto a sale together of land and buildings thereon, subject to conflictin g incumbrances, for the relative values of these particular kinds of property can be ascertained as well after as before the ■ sale, and there is no reason to extend the principle to immovables.
This view of the subject is sustained by the earlier decisions of this Court.
In the cases of Andry vs. Guyol, 13 L. 8; Diggs vs. Green, 15 L. 417: Succession of Evard, 6 R. 335, cases very similar to the instant case, where the property was sold without a-prior separate appraisement; the privilege was allowed on the proceeds, and the-claim, therefore, only asserted after the sale. See also, 6 M. N. S. 114; 16 L. 591; 1 R. 173; 20 An. 452. We think these decisions are correct expositions of tlie law on the subject., and at the same time are in entire consonance with justice. In the instant case, the land on which the building stands, is estimated to be worth only from $2.50 to $3 per acre, and almost the entire value of the property subject to the mortgage was given to it by the improvements put thereon by the labor and materials and workmanship of the opponent claiming the privilege; yet the mortgage creditor received the proceeds of its sale, under the judgment of the Court below, to the entire exclusion of the former, whose claim for a privilege was rejected, and who was put down on the tableau as a mere ordinary creditor. Such injustice is notsanctioned either by the letter or spirit of the law.
We are referred to the cases of Kohn vs. McHatton, 20 An. 486; Hoy vs. Peterman, 28 An. 289; Succession of Cox, 32 An. 1035. In every one of these cases it appears that the contract under which the privilege was claimed had not been recorded, and the decisions mainly, turned on this point, and in the last mentioned case, no appraisement was made before or after the sale, and what was said in any of these, touching a separate appraisement before the sale, to entitle the creditor to enforce his privilege, cannot he regarded as authority on the question at issue.
The evidence shows that the fund realized from the sale of the property subject to the privilege of opponent, is enough to satisfy his claim, and establishes, with sufficient certainty, the proportionate value, respectively, of the laud and the improvements thereon, so as to dispense with the necessity of remanding the case for the purpose of procuring a formal appraisement by experts. We do not think that the item in the account of opponent, for extra work of building a cistern is covered by the recorded contract, and the amount thereof, $52, cannot be allowed as a privilege.
*873 It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be amended, by recognizing the claim of opponent, Joseph Gazin, to the amount of five hundred and thirty-six dollars and fifty cents, and interest, as set forth in the judgment, as a privilege debt of the succession of Frank Lenel, deceased, and that it be paid by preference out of the proceeds of the sale of the property known as the Long Branch Hotel, to all other claims, except of the costs of affixing the seals, making the inventory, and the expenses necessarily incurred in effecting the sale of the property, and the account of the administration be amended and corrected accordingly; and the judgment, as thus amended, be affirmed, the cost of this appeal to be paid by the succession.
Rehearing refused.